IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| TONY OLIVEO MACK, | ) Civil Action No.  4:05-03540-HFF-TER |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) REPORT AND RECOMMENDATION |
| LT. McMILLAN AND SIMON MAJOR, JR., DIRECTOR, | ) |
| | ) |
| | ) |
| DEFENDANTS. | ) |
| | ) |

## I. PROCEDURAL BACKGROUND

The plaintiff, Tony Oliveo Mack, ("plaintiff" or "Mack") filed this action pro se on December 29, 2005, under  42 U.S.C. § 1983[1].  The plaintiff is/was housed at the Sumter-Lee Regional Detention Center (SLRDC). The plaintiff has filed this lawsuit,  pursuant to 42 U.S.C. § 1983, asserting that his constitutional rights were violated in that the defendants were deliberately indifferent to his medical needs.  Specifically,  plaintiff alleges that defendants delayed taking him to the hospital with pain and swelling in his groin area.[2]

Defendants filed a notice of motion and motion for summary judgment on August 7, 2006. Because the plaintiff is proceeding pro se, he was then advised on August 7, 2006, pursuant to

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

[2] Plaintiff filed a motion to amend his complaint to allege that these defendants have been opening his legal mail. This motion was granted provided plaintiff submits a proposed amended complaint raising the allegations he stated in his motion within fifteen (15) days of the order. If plaintiff does not submit a proposed amended complaint as set out in his motion within fifteen (15) days of the order, the motion will be considered denied. If plaintiff does submit the amended complaint within this time frame, defendants will have the opportunity to answer and file dispositive motions as to the new allegations.

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to defendants' motion for summary judgment with additional evidence or counter affidavits could result in the dismissal of his complaint. Plaintiff filed a response to the motion for summary judgment on September 7, 2006.

## II. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges in his complaint that his constitutional rights were violated for the following reasons, quoted verbatim:

> On December 3/05 I was sick and in pain. My gland was swollen like a golf ball. I told the officer that was working in my Pod that night that I was sick and my gland was swollen like a golf ball. He call Sgt. Sander. Sgt. Sander came to my room and look at it. He said yes it is swollin [sic]. He said I need to call Lt. McMillan. She came in the pod but she did not come up to my room to see what's going on with me. Sgt. Sander told her that my gland was swollin [sic] like a golf ball. She said give him a ice pack and two Tylenol so that's what Sgt. Sander did. I was in pain all that night. The next day December 4/05 the nurse came in to work that day. When she came to give my high blood pressure medication, I show her my gland. She said that I need to go to the Hospital that day. Lt. Buchanan was working on days. It was all most shiff [sic] change Lt. Buchanan said that she will past it on to the next shiff [sic] that is coming in. That will be Lt. McMillan shiff [sic]. Lt. McMillan came in to my Pod and told me that she was not going to send me to the Hospital to night she said that I can have another ice pack and two Tylenol. The nurse told them to send me to the Hospital that night. But Lt. McMillan did not do it. I went to the hospital on December 5/05. Lt. Gaillard send me to the hospital that night because I was in so much pain. The doctor said that I had a Hernia and I need to see another doctor and that's it. . . .
>
> I would like for the court to fire Lt. McMillan from her employment she did not give me proper medical care for two days. [F]or my pain and suffering for two days, I think the court should give me $50,000

>     because something was serious wrong with me and they did not give
>     me proper medical care for it.

(Complaint).

Defendants filed a motion for summary judgment arguing the case should be dismissed in that plaintiff has failed to establish a theory of liability on the part of defendant Major, plaintiff has failed to state a cause of action under the Eighth or Fourteenth Amendments because there was no deliberate indifference to any serious medical needs, and defendants are entitled to qualified immunity.

## B. STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleading is appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed. R. Civ. P.

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. While the court is to afford liberal consideration to a complaint filed by a pro se plaintiff, it is not required to ignore a clear failure of proof with respect to any question of fact. To the contrary, " 'the mere existence

3

of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.' " Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [see Fed. R. Civ. P. 56(e)], depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corporation, 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment.

Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987), and Evans v. Technologies Applications & Services Co., 875 F. Supp. 1115 (D.Md. 1995).

### C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

## D. MEDICAL INDIFFERENCE

As previously stated, plaintiff asserts that he had a swollen gland in his groin area and was in pain on the night of December 3, 2005, but was given an ice pack and Tylenol. On December 4, 2005, plaintiff alleges that the nurse examined him and said he needed to go to the hospital that day. Plaintiff contends the shifts changed and Lt. McMillan said no-one informed her that he needed to go to the hospital and she would have to get it approved with the Director. The medical staff and director were gone for the day. However, plaintiff alleges Lt. McMillan offered another ice pack and Tylenol. Plaintiff states he was not sent to the hospital until the next day, December 5, 2005, and, thus, there was medical indifference due to the delay which caused him to suffer with pain. In his response to the motion for summary judgment, plaintiff argues that Lt. McMillan gave him an ice pack and Tylenol when she is not a physician and did not give proper care because she was supposed to send him to the hospital that night. Plaintiff asserts on the next day, December 4, 2005, nurse Satterwhite examined him and said he needed to go to the hospital that day. Plaintiff asserts that the nurse told officer Loney. That night when the shift changed, plaintiff asserts that Officer Loney told Officer Henley that plaintiff would be going to the hospital. Later on that night, plaintiff alleges that he asked Officer Henley when he was going to the hospital. Plaintiff asserts Officer Henley asked Lt. McMillan who stated that she was not informed by Lt. Buchanan or nurse Satterwhite that he was suppose to go to the hospital and he would not be going because it would have to be approved by the director. Plaintiff argues that Lt. Buchanan should have briefed Lt. McMillan and that Lt. McMillan could have called the nurse at home or called Lt. Buchanan at home to see if he was to go to the hospital. Plaintiff asserts in his response that on December 5, 2006, Nurse Lawson spoke with Lt. Wiley about sending plaintiff to the hospital, and Lt. Wiley instructed the nurse that all the

firearms were being inspected and when the firearm came back, plaintiff would be going to the hospital. Plaintiff asserts that the pain got worse as the night shift came on and two officers found him lying on the floor of his cell in pain in his groin area. Plaintiff states he was transported to the hospital per the Director's instructions. Plaintiff contends that Lt. Gailliard made one phone call to the Director and was told to transport plaintiff to the hospital while Lt. McMillan made him suffer for three days without medical care.

In their motion for summary judgment, defendants argue plaintiff has failed to state a claim under the Eighth or Fourteenth Amendments because there was no deliberate indifference to any serious medical needs. Defendants submitted the affidavit of Lt. Nancy McMillan ("McMillan") who attests that she had been employed as a Lieutenant for five and one half years and had been employed by the SLRDC for thirteen and one half years. McMillan attests that on December 3, 2005, at about 8:00 p.m., plaintiff called the officer's desk and complained of severe pain on his right side. McMillan attests when Officer Lighty asked plaintiff how long he had that pain, he responded that he had that pain for two months and had seen the nurse several times. McMillan attests that Lighty went to plaintiff's cell to observe him and noticed slight swelling on the right side of his groin area and advised her as to plaintiff's complaint. As the medical staff had already left for the evening, McMillan attests that she understood that before the nurse left, she had an opportunity to check on the plaintiff and administer medications. McMillan attests that no-one from the medical staff had advised her that plaintiff needed to go to the hospital and she honestly believed that he would be okay overnight until the medical staff arrived at 7:30 a.m. McMillan attests that she informed plaintiff that he could be seen by medical the following morning and she personally gave plaintiff an ice pack for the swelling and arranged that he be monitored until he was seen by medical

7

personnel the following morning. McMillan attests on December 4, 2005, at about 8:00 p.m., she was advised by one of the officers that he understood the day shift nurse was supposed to have arranged plaintiff to be taken to the hospital. McMillan states that when she looked into the situation, she learned that for whatever reasons, plaintiff was never transported. McMillan attests that "since he had previously indicated he had the same pain for two months and was not take[n] to the hospital, I believed it was not an urgent situation or that the medical staff deemed it non-urgent. In the meantime, I offered him Tylenol and an ice pack compress. Plaintiff refused the medication and compress and stated that he was going to serve me with a lawsuit." (Nancy McMillan's affidavit). McMillan attests that on December 5, 2005, a corrections officer discovered plaintiff laying on the floor complaining of extreme pain in his groin area. After the nurse responded to the cell and examined plaintiff, the nurse authorized transportation to the hospital. *Id.* McMillan attests that medical treatment decisions and diagnoses at all relevant times were made by the licensed medical professions employed by Southeastern Health Care Services, a contract medical provider. Lastly, McMillan attests that at all times, she tried to tend to plaintiff's complaints in a good faith manner and at no time was deliberately indifferent to plaintiff's constitutional rights. Defendants also attached exhibits revealing that plaintiff was seen by medical staff upon his complaints of pain.

In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," <u>Id</u>., quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73 (1976). The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," <u>Gregg v.</u>

> Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825

(1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)). Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise.");

Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff were able to show that defendants' actions somehow constituted negligence, medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

In the present case, the plaintiff's allegations are brought against defendants for not timely transporting him to the hospital. Although plaintiff did not agree with the type of treatment he received, the fact is plaintiff was provided treatment and medication was made available for the pain. As previously stated, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. Negligence, in general, is not actionable under 42 U.S.C. § 1983. There has been no deliberate indifference shown to the overall medical needs of the plaintiff. Plaintiff was

examined by a nurse on December 4, 2005, and December 5, 2006, was administered Tylenol for pain, and was transported to the hospital on December 6, 2006. As defendants argue, assuming *arguendo* a hernia is considered a serious or life threatening condition, there is no evidence that defendant McMillan was deliberately and intentionally indifferent to plaintiff's needs. In the light most favorable to the plaintiff, there was a lack of communication between day shift personnel and Lt. McMillan. While this conduct could involve negligence on the part of the day shift personnel, there is no evidence of deliberate indifference by Lt. McMillan. Lt. McMillan attempted to provide ice and Tylenol to plaintiff on the night of December 4, 2005, anticipating a nurse visit on the morning of December 5, 2005. Also, this involved a condition Lt. McMillan was informed and thought plaintiff had for a couple of month's duration. Further, plaintiff has not alleged or provided evidence that the delay in transporting plaintiff to the hospital caused any permanent injury or rises to the level of deliberate indifference to a serious medical need. Based on the evidence presented, it is recommended that defendants' motion for summary judgment be granted.

### E.  QUALIFIED IMMUNITY

Defendants also contend that to the extent plaintiff seeks to proceed against the defendants in their individual capacities, the defendants are entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982).

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute

immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824

(1995). As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that the defendants' motion for summary judgment be granted on this issue.

## F.  RESPONDEAT SUPERIOR

Defendants argue defendant Simon Major is a supervisor at the SLRDC and plaintiff has not alleged that defendant Major has failed to act or even that he has personally violated his rights. Defendants assert that plaintiff has failed to allege or prove the direct participation on the part of defendant Major in any of the alleged events. Plaintiff argues in his response that "When officers come on they shiff [sic] they read the Rules and Regulations. At the beginning of the Rules, the officers said this facil[ity] is managed and controlled by the Director and staff."

Defendants submitted the affidavit of Simon Major ("Major") who attests that he is employed as the Director of the SLRDC and has held this position during plaintiff's incarceration. Major attests that he reviewed plaintiff's allegations in the complaint. Major asserts that at all relevant times within plaintiff's complaint, Sumter County contracted with Southeastern Health Care Services to provide medical personnel for the provision of in-house medical care for inmates at the SLRDC. As the Director of the facility, Major attests that he relies on the decision of the medical personnel regarding medical care and treatment and does not interfere with medical-related issues. Major attests that based on the SLRDC records, plaintiff was arrested on October 7, 2004, on a murder charge and is currently detained at SLRDC pending his criminal trial. Major attests he did not deprive or deny plaintiff any medical care or treatment during his incarceration nor was he ever made

14

aware of any problems relating to plaintiff's medical care. (Major's affidavit).

Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982). The employer or supervisor may only be held liable if the plaintiff can show that they had actual knowledge of the specific danger, but were deliberately indifferent to the plaintiff's needs despite their knowledge of this danger, Slakan v. Porter, 737 F. 2d 368 (4th Cir. 1984).

In a §1983 action, a supervisor is not liable for the acts of an employee, absent an official policy or custom which result in illegal action. Monell, supra. A medical treatment claim is not appropriate against a superintendent/supervisor absent an allegation that he was personally connected to the treatment received. Vinnedge v. Gibbs, 550 F. 2d 926 (4th Cir. 1977). Supervisory liability requires that supervisory officials failed promptly to provide an inmate with needed medical care, deliberately interfered with a prison doctor's performance, tacitly authorized or were indifferent to prison physician's constitutional violation. Milter v. Beon, 896 F.2d 848 (4th Cir. 1990).

Defendant Major cannot be held liable under a respondeat superior theory under Title 42, U.S.C. § 1983 for the acts of a subordinate employee. Monell, supra. Additionally, there is no evidence defendant Major was personally involved in the allegations as alleged. In fact, plaintiff states in his response in opposition to summary judgment that when Director Major was called about the situation, Director Major instructed the officer to have plaintiff transported to the hospital. Specifically, plaintiff states in his response as follows: "Lt. Gailliard made one phone [call] to the Director he told them to transport me to the hospital." Before that one phone call, plaintiff does not

allege that Director Major knew plaintiff was in pain or had a swollen place on his groin or that he needed to go to the hospital. Thus, it is recommended that all allegations against defendant Major be dismissed on this theory.

### III.  CONCLUSION

For the reasons set forth herein, it is RECOMMENDED that the defendants' motion for summary judgment (document #21) be GRANTED.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

December 7, 2006
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**